NIMMONS, Judge.
Appellant, Shaw Maddox, appeals from a summary judgment granted in favor of St. Joe Papermakers Federal Credit Union dismissing his counterclaim for recoupment under the Federal Truth-In-Lending Act.[1] We reverse.
Maddox, along with four others, signed as comaker for Ernest Williams on a $10,-000 promissory note held by the Gulf Teachers Federal Credit Union which later merged with St. Joe Papermakers Federal Credit Union. At the time he cosigned, the appellant also signed a comaker’s statement of confirmation which stated that he (Maddox) would be responsible for all or any part of the balance due in the event the principal failed to pay. Less than three years later, Williams defaulted on the note.
The credit union filed a complaint against the five comakers, including the appellant, to recover the remaining balance which was in excess of $5,800. The appellant counterclaimed alleging the credit union failed to comply with the provisions of the Federal Truth-In-Lending Act by failing to make written disclosures on the promissory note itself regarding the “finance charge,” “amount financed,” and “total of payments” (the Truth-In-Lending disclosure boxes).
The appellant claimed this failure entitled him to a set-off in the amount of $1,000. The appellant also alleged that the note itself evidenced the fact that the loan proceeds were paid in part directly to Williams and in part on Williams’ account allegedly to satisfy a pre-existing debt owed to the credit union. This indicated *962 the loan to Williams was for personal use and not business reasons.
Further, due to discrepancies in the affidavits of the manager and treasurer of the credit union filed by the appellee, the appellant convinced the judge not to consider them in his ruling on the summary judgment.[2] Attached to those affidavits, and not found anywhere else in the record, is the loan application submitted to the credit union by Williams stating the purpose of the loan was “to buy into small business in Apalachicola, FL.”
The credit union filed a motion for summary judgment which the court granted and entered judgment against the appellant and the comakers for the outstanding balance on the note. It appears from the colloquy between the trial court and counsel that the judge based his ruling on the fact that the appellant, Maddox, signed the comaker’s statement of confirmation which affirmatively states the comaker’s responsibility to repay the loan in the case of the principal’s default. The trial court also found there was no question of fact as to Maddox's counterclaim.
The purpose of the consumer credit cost disclosure subchapter is to “assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available ... and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.” 15 U.S.C.A. § 1601. Section 1640(a) establishes creditor’s liability at up to $1,000 for failure to comply with any of the disclosure requirements. Further, Section 1640(h) allows a consumer in default on the obligation to assert a violation as a counterclaim to an action to collect amounts owed by the consumer. Section 1602(h) defines consumer with reference to a credit transaction as follows:
(h) The adjective “consumer” ... characterizes the transaction as one in which the party to whom the credit is offered or extended is a natural person, and the [1] money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.
Additionally, certain transactions are specifically exempt from the Truth-In-Lending Act protections. Among others, credit transactions involving extensions of credit primarily for business, commercial or agricultural purposes are not required to adhere to the disclosure requirements. 15 U.S.C.A. § 1603(1).
Thus, violations of the Act for failure to complete the notice provisions can be raised by consumers[3] to whom the credit is extended for personal, family, or household purposes. Violations can also be raised if the credit is extended for other than business, agricultural, or commercial purposes.
In their arguments on appeal, the credit union asserts that the appellant is not entitled to the set-off for two reasons: (1) he was not a consumer pursuant to the definition; and (2) the disclosures are not required because the credit was extended for business purposes. In response, the appellant asserts that the business purpose of the loan cannot be proven because the trial judge did not consider the affidavits tendered by the appellee to which the primary obligor’s loan application was attached. It is clear the appellee’s contention regarding a comaker’s ability to sustain an action for set-off is unfounded. In order for Williams’ application to be considered on appeal, the credit union would have had to cross appeal the trial court’s ruling regarding the affidavits. However, the issue was not cross-appealed nor raised by the appel-lee in its brief. Therefore the affidavits and attached loan application cannot be considered by this court.
A genuine issue exists as to whether the purpose of the loan has been demonstrated in such a way as to provide an exception to the Truth-In-Lending Act. It *963 has been held that the use of the money, property, or services which is the subject of the underlying transaction and not the subjective motivation of the borrower controls when determining whether the transaction is exempt. Sims v. First Nat. Bank, Harrison, 590 S.W.2d 270 (Ark.1979). Further, the use of the proceeds of the loan determines the primary purpose and if the loan was used in part for business and in part for personal use, the use of the greater portion determines whether the loan falls within the purview of the Act. Bokros v. Associates Financial, Inc., 607 F.Supp. 869 (N.D.Ill.1984).
The only evidence regarding the use of the loan in the case at bar is the “itemization of the amount financed” which is situated at the bottom of the the note instrument and indicates that $5,300 was paid on Williams’ account and $4,700 was given to him directly.
Determining the use of the loan is critical to establishing whether it is exempt from the disclosure requirements under the Truth-in-Lending Act and ultimately whether the appellant can sustain an action for set-off against the creditor. When every inference is viewed in the light most favorable to the appellant, there appears to be a genuine issue of material fact which must be resolved.
The trial court was correct in finding no genuine issue of material fact as to the appellant’s liability after the principal’s default and that issue will not be reversed. However, we reverse the trial court’s order granting the summary judgment as to the appellant’s counterclaim asserting the truth-in-lending offset. The credit union has not sustained its burden of showing there was no genuine issue of material fact as to the purpose of the loan.
We reverse the order denying the appellant’s counterclaim and remand for further proceedings consistent with this opinion.
SMITH and ZEHMER, JJ., concur.

. 15 U.S.C.A. §§ 1601 et seq.

. In the order appealed, the court specifically stated that it was not considering those affidavits.

. According to Barash v. Gale Emp. Credit Union, 659 F.2d 765 (7th Cir.1981), nothing in the Act limits a creditor's liability for its violation to primary obligors, comakers or joint obligors.